USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 5/31/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MICHAEL A. PELLIGRINO,

Plaintiff,

v.

MORGAN STANLEY SMITH BARNEY LLC, MORGAN STANLEY SMITH BARNEY FA NOTES HOLDINGS LLC, and EVAN BOUCHER, *individually*,

Defendants.

No. 17-CV-7865 (RA)

MEMORANDUM OPINION AND ORDER

---

RONNIE ABRAMS, United States District Judge:

Plaintiff Michael Pelligrino brings this action against his former employers for state and federal retaliation and employment-discrimination claims.[1] In response to the Complaint, Defendants filed a motion to compel arbitration and stay the case based on an arbitration agreement and policy set in 2015. Plaintiff opposed the motion and Defendants replied. After the motion was fully briefed, Plaintiff submitted additional information and documents in support of his opposition papers, including a declaration from Plaintiff that was inadvertently omitted from Plaintiff's previous filing, P's Decl. (Dkt. 19), and a letter attaching and making arguments based on Plaintiff's original employment agreement with Morgan Stanley, P's Letter (Dkt. 23). Defendants responded in opposition to Plaintiff's supplemental filing regarding the Employment

---

[1] There is some confusion as to the proper spelling of Plaintiff's last name. In the Complaint's caption and the body of Plaintiff's Declaration at Dkt. 19, Plaintiff spells his name "Pelligrino." Nearly everywhere else—including in the bolded title of Plaintiff's Declaration, the body of the Complaint, and in Defendants' submissions—the parties spell his name "Pellegrino," which appears to be the correct spelling based on Plaintiff's Employment Agreement (Dkt. 23-1). Unless Plaintiff requests that the Clerk of Court revise the case's caption, however, the caption shall remain under—and the Court will continue to use— the "Pelligrino" spelling.

Agreement. Ds' Resp. (Dkt. 24). For the reasons explained below, the Court will consider Plaintiff's supplemental filing but nonetheless grants Defendants' motion to compel arbitration and stay the case.

The Federal Arbitration Act (FAA) provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," and it permits a party to an arbitration agreement to petition a district court for "an order directing that . . . arbitration proceed in the manner provided for in such agreement." 9 U.S.C. §§ 2, 4. "But the FAA 'does not require parties to arbitrate when they have not agreed to do so.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012)). "Whether or not the parties have agreed to arbitrate is a question of state contract law." *Schnabel*, 697 F.3d at 119.[2] "In deciding motions to compel, courts apply a 'standard similar to that applicable for a motion for summary judgment.'" *Nicosia*, 834 F.3d at 229 (quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). A court must therefore "consider all relevant, admissible evidence submitted by the parties" and "draw all reasonable inferences in favor of the non-moving party." *Id.* (citations omitted).

Here, the parties do not dispute the relevant underlying facts. Plaintiff began working as a financial advisor at Morgan Stanley Smith Barney LLC in 2012. Compl. ¶ 14 (Dkt. 3). When he joined the firm, he signed an employment agreement that included the following:

> 8. **ARBITRATION**
> You agree to arbitrate any dispute, claim or controversy that may arise between you and MSSB or any person that is required to be arbitrated: (i) under the rules,

---

[2] Defendants contend that this case is governed by "either New York or New Jersey law," but rely primarily on New York cases. *See* Ds' Mem. at 12, 13 (Dkt. 8); Ds' Reply Mem. at 2–3, 6 (Dkt. 18). Plaintiff, meanwhile, relies exclusively on New York law. *See* P's Opp. Mem. at 3, 4, 6, 7 (Dkt. 15). Given Plaintiff's assumption and Defendants' acquiescence thereto, this Court applies New York law. *See, e.g., Point-Du-Jour v. Am. Airlines*, No. 07-CV-3371 (KAM) (RLM), 2009 WL 3756627, at *4 (E.D.N.Y. Nov. 5, 2009) (applying New York law where both parties relied on New York law in their motion papers and neither party objected to the application of New York law).

2

constitutions, or by-laws (as may be amended from time-to-time) of any self-regulatory organization with Industry Regulatory Authority ("FINRA"), or (ii) pursuant to any arbitration agreement to which you are a party. . . . Except as otherwise expressly agreed, any dispute as to the arbitrability of a particular issue or claim pursuant to this arbitration provision must be resolved in arbitration. . . . .

14. **ENTIRE AGREEMENT**
All terms and conditions of your employment with MSSB are contained in this Agreement and other written agreements between you and MSSB, and the policies and procedures of the Firm. Unless otherwise agreed to in writing, any prior discussions that you have had with MSSB are not part of the terms and conditions of your employment with MSSB. This writing constitutes the entire agreement of the parties with respect to the subject matter recited in this Agreement. This Agreement may be amended only by a writing signed by both you and MSSB.

*See* Employment Agreement at ¶¶ 8, 14 (Dkt. 23-1). The arbitration clause in the Employment Agreement primarily pertains to FINRA arbitration, which is not relevant to this case, but it also contemplated Plaintiff's ability to enter into and be bound by other arbitration agreements. *See* Ds' Resp. at 2. At the time Plaintiff signed the employment agreement, Morgan Stanley administered an arbitration program called Convenient Access to Resolutions for Employees ("CARE"). *See* Krentzman Decl. ¶ 3 (Dkt. 9). As originally drafted, CARE did not require employees to arbitrate employment discrimination claims. It did, however, specify that the program's terms "may change or be discontinued" and that any such changes would be "announced in advance" before becoming "equally binding upon [the employee] and the Firm." *Id.*

In 2015, Morgan Stanley expanded CARE to mandate arbitration for "all covered claims" between Morgan Stanley and its employees. *Id.* ¶ 4. Morgan Stanley's human resources department sent a notice of this change to Plaintiff and other employees at their work email addresses on September 2, 2015, with the subject line "Expansion of CARE Arbitration Program." *See id.* ¶¶ 4–9 & Ex. 2 (Dkt. 9-2). The email also included links to the firm's new Arbitration Agreement and the revised CARE Guidebook, and it encouraged employees to read those

3

documents carefully. *Id.* The text of the Arbitration Agreement included the following:

> 1. **Binding Mutual Arbitration.** You and Morgan Stanley agree that any Covered Claims (defined below) will be resolved by final and binding arbitration as set forth in this Arbitration Agreement and in the arbitration provisions of the CARE Guidebook, a copy of which is annexed hereto. This Arbitration Agreement, including the Waivers set forth in paragraph 4 of this Arbitration Agreement, shall be governed by and interpreted in accordance with the Federal Arbitration Act ("FAA"). This Arbitration Agreement applies with respect to all Covered Claims, whether initiated by you or Morgan Stanley, and makes arbitration the required and exclusive forum for the resolution of all Covered Claims. **BY ENTERING INTO THIS ARBITRATION AGREEMENT, YOU AND MORGAN STANLEY EACH ACKNOWLEDGE AND AGREE THAT, TO THE FULLEST EXTENT PERMITTED BY LAW, YOU AND MORGAN STANLEY ARE GIVING UP YOUR AND ITS RIGHT TO A JURY TRIAL IN ANY FORUM.**
>
> 2. **Covered Claims.** Except for the Excluded Claims (defined below), and to the fullest extent permitted by law, Covered Claims include any and all claims or disputes between you and Morgan Stanley or any of its current, former, and future directors, officers, employees, agents, managers, shareholders, based on, arising out of, or which arose out of or in any way relate to your employment, compensation, and terms and conditions of employment with Morgan Stanley anywhere in the world, or the termination thereof, and claims based on, arising out of, or which arose out of or in any way relate to your recruitment or application for employment and hiring. Covered Claims include but are not limited to ... statutory discrimination, harassment and retaliation claims, and claims under, based on, or relating to any federal, state or local constitution, statute or regulation of any country, state or municipality, including, without limitation, ... Title VII of the Civil Rights Act of 1964 ("Title VII"), ... and any other federal, state or local wage and hour, discrimination or employment law, and any and all other federal, state, or local constitutional, statutory, regulatory, or common law claims or causes of action now or hereafter recognized. **This Arbitration Agreement applies to all Covered Claims, including any Covered Claims based on, arising out of, or which arose out of or in any way relate to acts and omissions that occurred before you and Morgan Stanley entered into this Arbitration Agreement.**

Arbitration Agreement at ¶¶ 1, 2 (Dkt. 9-3) (emphasis in original). Using much the same language, the revised CARE Guidebook thoroughly described the expanded arbitration program, including what claims would be covered and excluded. *See* Krentzman Decl. ¶ 11 & Ex. 4 at 4–5, 11–23

4

(Dkt. 9-4). The Guidebook described itself as "set[ting] forth the rules related to CARE that are binding on [the employee] and the Firm." *See* Ex. 4 at 4.

The email that linked to the Arbitration Agreement and Guidebook also stated that employees had until October 2, 2015, to opt out of the new CARE program without any consequences for their employment, and it provided them with a link to the opt-out form and instructions for submitting it. If an employee did not opt out, the email explained, his or her continued employment would manifest acceptance of—and agreement to be bound by—the Arbitration Agreement and revised CARE Guidebook. A reminder notice repeating the instructions for opting out was maintained and accessible on Morgan Stanley's human-resources intranet. Krentzman Decl. ¶ 15.

Plaintiff did not submit an opt-out form, respond to the email, or otherwise communicate with human resources about CARE at any point prior to his termination in 2016. Morgan Stanley's records indicate that Plaintiff's work email did not generate an out-of-office automatic response and that he was not on a leave of absence at the time the email was sent. *See id.* ¶ 5. Plaintiff, however, avers in his Declaration that he "never viewed or received any email regarding changes or amendments to the company's employee handbook, dispute resolution procedures, or arbitration agreement." P's Decl. ¶ 2. In support of this statement, he explains that he was on vacation in Connecticut on September 2, 2015, and did not return until September 6, 2015. *Id.* ¶ 3. He also avers that he never used automatic out-of-office responses while he worked at Morgan Stanley. *Id.* ¶ 4. Plaintiff was terminated from Morgan Stanley in December 2016. Compl. ¶ 46.

These facts—particularly, that Morgan Stanley sent the relevant email to Plaintiff, that the email provided a way to opt out of the expanded program, and that Plaintiff did not so opt out— "compel the conclusion" that Plaintiff is bound by the Arbitration Agreement and the CARE

5

Guidebook's arbitration provisions in light of various principles of New York law. *Clearfield v. HCL Am. Inc.*, No. 17-CV-1933 (JMF), 2017 WL 2600116, at *2 (S.D.N.Y. June 15, 2017). First, New York recognizes "a presumption that a party has received documents when mailed to the party's address in accordance with regular office procedures." *Manigault v. Macy's East, LLC*, 318 F. App'x 6, 7 (2d Cir. 2009) (summary order) (citing *Meckel v. Cont'l Res. Co.*, 758 F.2d 811, 817 (2d Cir. 1985)). Courts have applied this presumption in the email context, and this Court sees no reason not to do so as well. *See, e.g., Clearfield*, 2017 WL 2600116, at *2 (citing *Abdullah v. Am. Express Co.*, No. 3:12-CV-1037-J-34 (MCR), 2012 WL 6867675, at *4–5 (M.D. Fla. Dec. 19, 2012)). Second, as many other courts in this Circuit have concluded, the "denial of receipt of the mailing" cannot by itself "rebut the presumption" of receipt under New York law. *Manigault*, 318 F. App'x. at 7; *see also, e.g., Clearfield*, 2017 WL 2600116, at *2; *Couch v. AT & T Servs., Inc.*, No. 13-CV-2004 (DRH) (GRB), 2014 WL 7424093, at *7 (E.D.N.Y. Dec. 31, 2014). To create a genuine dispute as to whether the presumption applies, Plaintiff must instead produce "some proof that the regular office practice was not followed or was carelessly executed." *See Couch*, 2014 WL 7424093, at *7 (quoting *Meckel*, 758 F.2d at 817). He has not done so here. Finally, New York law does not require that both parties sign the relevant agreement for it to be binding. *See Thomas v. Pub. Storage, Inc.*, 957 F. Supp. 2d 496, 499–500 (S.D.N.Y. 2013). Rather, "[a]n employee may consent to a modification [of] the terms of employment by continuing to work after receiving notice of the modification." *Manigault*, 318 F. App'x. at 7; *see also DuBois v. Macy's East Inc.*, 338 F. App'x 32, 34 (2d Cir. 2009) (summary order) (holding that a motion to compel was properly granted where the employee "continued employment . . . after receiving notice of the new dispute resolution program" and failed to "present[] sufficient evidence to allow a reasonable factfinder to conclude that he opted out of the associated mandatory arbitration").

6

Plaintiff is therefore bound to the Arbitration Agreement and the CARE Guidebook's arbitration provisions here.

Plaintiff's arguments to the contrary are unpersuasive. He contends that he was on vacation at the time the email was sent and that his absence from work on that particular day explains his failure to receive the email. But Plaintiff admits that he returned to work on September 6, 2015—just four days after the email was sent and more than three weeks before the opt-out deadline. Plaintiff also remained at Morgan Stanley for over a year after he returned to work from that vacation, but apparently never voiced any objections to the revisions to the CARE program. *See Clearfield*, 2017 WL 2600116, at *2 (holding that one day to respond to an email similar to the one at issue here after an employee's return from leave was sufficient, particularly given that the employee "*never* attempted to opt out of the [arbitration agreement] *at any point*" between returning to work and the employee's ultimate termination (emphasis in original)). This Court is not unsympathetic to Plaintiff's position, especially if, as he claims, he "was not even aware" that the relevant email existed until he read Defendants' present motion. *See* P's Opp. Mem. at 5. Plaintiff has not, however, provided this Court with grounds on which to depart from the numerous cases in this Circuit that have consistently found that the presumption of receipt applied and granted motions to compel in functionally identical cases. *See, e.g., Manigault*, 318 F. App'x at 7–8; *Clearfield*, 2017 WL 2600116, at *2; *Couch*, 2014 WL 7424093, at *6–8. Thus, as explained above, Plaintiff's assertion that he never saw the email "is insufficient to rebut the presumption" that he received it. *See Clearfield*, 2017 WL 2600116, at *2 (citation omitted).[3]

---

[3] Defendants also assert that Plaintiff reviewed and responded to other Morgan Stanley emails on September 2, 2015. They did not submit those emails (or an affidavit swearing to their existence) to the Court, however, because the emails purportedly included confidential information. These emails, if accurately described, would only bolster Defendants' position, but the Court need not consider them now.

Plaintiff's remaining arguments focus on whether his silence sufficiently manifested his intent to be bound under New York law. As an initial matter, he relies on New York cases requiring that arbitration agreements be established by "clear, explicit, and unequivocal" agreement. *See, e.g., Matter of Fiveco, Inc. v. Haber*, 893 N.E.2d 807, 809 (N.Y. 2008) (citation omitted). Federal courts, however, have consistently rejected any heightened standard for proving arbitration agreements, which may not be treated "differently than other types of contracts" because the FAA preempts state laws from requiring additional proof for arbitration agreements. *See Weiss v. Macy's Retail Holdings Inc.*, 265 F. Supp. 3d 358, 363 (S.D.N.Y. 2017) (citation omitted); *see also Couch*, 2014 WL 7424093, at *3. Thus, "a party seeking to enforce an arbitration agreement must prove its existence by a preponderance of the evidence only, the standard that applies for nonarbitration agreements" under New York law. *Weiss*, 265 F. Supp. 3d at 363 (citing *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993)); *see also Couch*, 2014 WL 7424093, at *3.

Plaintiff further contends that New York has a general rule that silence does not manifest assent and that the exceptions to that rule, as recently described by the court in *Weiss v. Macy's Retail Holdings Inc.*, do not apply to this case. 265 F. Supp. 3d at 364. The *Weiss* court rightly noted that "silence may operate as acceptance where 'the offeror has stated or given the offeree reason to understand that assent may be manifested by silence or inaction, and the offeree in remaining silent and inactive intends to accept the offer.'" *Id.* (citation omitted). The court ultimately held, however, that the employee in *Weiss* lacked notice that his silence could be converted into assent because "nothing in any of the documents that [the employer] gave or sent to its employees state[d] that an employee's continuation of employment ... constitute[d] acceptance of the agreement to arbitrate." *Id.* at 366. The *Weiss* court thus distinguished its

8

holding from those in "cases in which an employer issues a new employee handbook or set of employee guidelines, and the employee consents to the terms contained therein by continuing his employment." *Id.* Here, unlike in *Weiss*, Morgan Stanley's email to Plaintiff warned him that, "[b]y continuing your employment with Morgan Stanley, you accept and agree to, and will be covered and bound by the terms of the Arbitration Agreement and the arbitration provisions of the CARE Guidebook, unless you elect to opt out of the CARE Arbitration Program[.]" Krentzman Decl. ¶ 7. The reminder notice posted on the human resources intranet contained nearly identical language. *Id.* ¶ 15. This case is thus far more like the cases the court in *Weiss* distinguished than like *Weiss* itself.

Finally, Plaintiff argues in his supplemental filing that his silence does not amount to acceptance because the original Employment Agreement that he signed in 2012 provided that "[t]his Agreement may be amended only by a writing signed by both" him and Morgan Stanley. *See* Employment Agreement at ¶ 14. According to Plaintiff, this language barred Morgan Stanley from amending his terms and conditions of employment without his written consent. The Court disagrees. When Plaintiff began working at Morgan Stanley in 2012, the CARE policy was in effect and expressly contemplated the need for amendments: it warned employees that the program's terms "may change or be discontinued" and that any such changes would be "announced in advance" before becoming "equally binding upon [the employee] and the Firm." *See* Krentzman Decl. ¶ 3. In the September 2, 2015 email regarding the CARE expansion, Morgan Stanley announced such a change in advance as required. It further made clear that an employee, through his or her continued employment, would "accept and agree to" the linked-to Arbitration Agreement and CARE Guidebook unless they opted out. Although the 2015 expansion, as described above, was a change to Plaintiff's terms and conditions of employment, it was not an amendment to his

9

Employment Agreement. The Employment Agreement recognized that "[a]ll terms and conditions" of Plaintiff's employment "are contained in" in three places: "this Agreement *and* other written agreements between you and MSSB, *and* the policies and procedures of the Firm." *See* Employment Agreement at ¶ 14 (emphasis added). But it required written and signed amendments as to only "[t]his Agreement." *Id.* The expansion of the CARE program—formalized through the promulgation of the revised CARE Guidebook and the Arbitration Agreement—was a binding change in firm policy that altered Plaintiff's terms and conditions of employment, not an amendment to the original Employment Agreement. The original Employment Agreement thus did not require Morgan Stanley to obtain Plaintiff's written consent to the 2015 changes to its arbitration program.

For these reasons, and because Plaintiff's claims here fall within the scope of the 2015 Arbitration Agreement and the CARE Guidebook's arbitration provisions, Defendants' motion to compel arbitration is granted. This case is therefore stayed pending resolution of the arbitration. *See Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015) ("[T]he text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay [has been] requested."). The parties are directed to submit a joint status update by November 30, 2018, or by 30 days after the completion of arbitration, whichever date is sooner.

The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 7.

SO ORDERED.

Dated: May 31, 2018
New York, New York

Ronnie Abrams
United States District Judge

10